UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BEALS ELLIS,<br><br>    Plaintiff,<br><br>        v.<br><br>DAVID L. JARVIS, *et al.*,<br><br>    Defendants. | Civil Action No. 16-31 (JEB) |

## MEMORANDUM OPINION

It is undoubtedly true that many people would prefer not to pay taxes. Yet the great majority of us do so as the price of living in a civilized society. Such a lesson seems lost on *pro se* Plaintiff Michael Ellis, who has waged a long-running war with the Internal Revenue Service to avoid filing tax returns. In this latest suit against a number of federal officials, he contends once again that the IRS has no authority to collect taxes from most Americans. In addition, in the hopes of blocking his potential federal indictment in Texas for tax avoidance, Ellis wants this Court to compel the Department of Justice to inform grand juries of the illegality of the Service's actions. Defendants now move to dismiss this suit. As the Anti-Injunction Act and a lack of standing prevent Plaintiff from succeeding here, the Court will grant the Motion.

I.      Background

The current Complaint alleges that "IRS and DoJ are involved in a collusion to conceal from United States juries and judicial fact-finders exculpatory evidence incontrovertibly proving the income tax was never imposed by Congress on most Americans." Compl. at 2. More specifically, "the IRS scheme to enforce the income tax on so-called 'non-filers'" constitutes a

1

criminal falsification of government records and "create[s] by fraud the appearance of 'deficiencies' owed by 'non-filers' to the Treasury, and the concomitant duty to file a return." Id.

Ellis, it turns out, has more than a theoretical interest in this issue. According to him, "Defendant [IRS Commissioner] Jarvis is currently concealing from the United States Grand Jury for the Northern District of Texas the exculpatory evidence existing in the files of IRS concerning Plaintiff . . . ." Id. at 3. In fact, "Mr. Jarvis appears to be defrauding the United States Grand Jury in order to . . . secure an indictment of Plaintiff . . . [and to] retaliate against Plaintiff for seeking to terminate the IRS/DoJ income tax fraud." Id. Ellis explains that if the Court requires the Attorney General to present to the grand jury information about the IRS's fabrication of evidence concerning Plaintiff, "the Grand Jury would immediately terminate its investigation of Plaintiff . . . ." Id. Such an outcome "would also vindicate Plaintiff's Due Process right to not be criminally prosecuted for 'evading' or 'failing to pay' an exaction in the form of a tax which the Attorney General and her subordinates KNOW or should have known was not imposed on him by Congress." Id.

Ellis asserts two causes of action. The first under the Administrative Procedure Act alleges that Defendants are "concealing exculpatory evidence from a United States Grand Jury in the Northern District of Texas which proves the Defendant IRS systematically falsifies its records concerning Plaintiff in order to fabricate a debt he supposedly owes to the Treasury, and create the appearance of a colorable duty for him to file an income tax return." Id. at 8. The second invokes the Fifth Amendment in alleging that "Plaintiff has a due process right not to be prosecuted on the basis of evidence fabricated by the Government, and a due process right to not

be prosecuted for 'evading' a tax the Government KNOWS was never imposed upon him . . . ." Id. at 9.

As relief, Plaintiff asks the Court to "ORDER the DoJ to announce to every fact-finder in income tax cases involving those labeled by the IRS as so-called 'non-filers' such as Plaintiff, the fact IRS fabricates records concerning 'non-filers' to create the false appearance of 'deficiencies' owed to the Treasury" and "DoJ's collusion with IRS to conceal exculpatory evidence in IRS records." Id. In addition, he wishes the Court to "[e]njoin any artifice, scheme, device, sham, presumption or procedure by IRS and DoJ as part of any conspiracy to bypass the rights of individuals in connection with income taxes . . . ." Id.

Ellis and his compatriots are no strangers to the courts in this district. For example, on March 19, 2014, Plaintiff sued the IRS Commissioner here alleging that the Service's Automated Substitute for Return Program relating to non-filers violated his due-process rights. See Ellis v. Commissioner, Internal Revenue, No. 14-471 (D.D.C.), ECF No. 1 (Complaint). As in the current suit, he "claim[ed] that the Internal Revenue Service . . . is committing criminal fraud by falsifying the tax records of United States citizens who do not file income tax returns." Ellis, 67 F. Supp. 3d 325, 327 (D.D.C. 2014). Judge Amy Berman Jackson found the claims barred by the Anti-Injunction Act and Plaintiff's lack of standing. Id. at 327-28. In a summary unpublished decision, the Court of Appeals affirmed the dismissal, noting, "Appellant has not shown that the district court erred in concluding that his claims are barred by the Anti-Injunction Act . . . ." ECF No. 39 (Mandate).

Similarly, Robert McNeil, whose declaration Plaintiff has attached to − and relies upon in − his current Complaint, recently filed his own *pro se* suit in the same distinctive format and font, McNeil v. Commissioner, Internal Revenue, No. 15-1288 (D.D.C. filed Aug. 7, 2015), also

bringing the same claims and challenging the IRS's ability to prepare substitute returns and proceed against non-filers. See id., ECF No. 1 (Complaint). Judge Colleen Kollar-Kotelly dismissed the case on the ground that the Anti-Injunction Act deprived the Court of subject-matter jurisdiction. McNeil, 2016 WL 1446127, at *1 (D.D.C. Apr. 12, 2016); see also Florance v. Commissioner, Internal Revenue, No. 12-933 (D.D.C. filed June 1, 2012) (complaint in same distinctive format alleging IRS "manipulates and falsifies" databases for substitute returns related to non-filers; dismissed by Judge Rosemary Collyer in summary opinion); Depolo v. Ciraolo-Kleppler, No. 15-2039 (D.D.C. filed Nov. 18, 2015) (complaint in same distinctive format alleging IRS falsifies records regarding substitute returns for non-filers; motion to dismiss pending).

## II.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "For this reason 'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (alterations in original) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).

Article III of the United States Constitution limits the jurisdiction of the federal courts to resolving "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. A party's standing "is an

essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560.  To have standing, a party must, at a constitutional minimum, meet the following criteria.  First, the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (citations omitted).  Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Id. (alterations in original) (citation omitted).  Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 560-61 (citation omitted).  A "deficiency on any one of the three prongs suffices to defeat standing." U.S. Ecology, 231 F.3d at 24.

**III.   Analysis**

Plaintiff's suit seems to seek three forms of relief.  Even if not specifically pled, he first, and most fundamentally, wants the Court to block the IRS's efforts to recoup the taxes he owes.  Second, he asks the Court to intercede in the pending criminal investigation of him in the Northern District of Texas.  Third, he desires that the Court impose requirements in the potential prosecution of other non-filers.  Although the doctrine of *res judiciata* could foreclose much of this action, the Court will nonetheless address each point separately.

    A.   Block Tax Collection

As Judge Jackson clearly concluded in Plaintiff's prior suit – and the Court of Appeals summarily affirmed − the Anti-Injunction Act strips courts of jurisdiction to entertain suits to enjoin the collection of taxes.  See Ellis, 67 F. Supp. 3d at 327.  Pursuant to 26 U.S.C. § 7421(a), "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained

in any court by any person, whether or not such person is the person against whom such tax was assessed." The D.C. Circuit has explained, "The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." Cohen v. United States, 650 F.3d 717, 724 (D.C. Cir. 2011); see also We the People Found., Inc. v. United States, 485 F.3d 140, 142-43 (D.C. Cir. 2007) (finding AIA barred claim despite plaintiffs' framing it as constitutional issue).

In addition,

> [i]t makes no difference that plaintiff couches those goals in terms of stopping a criminal fraud: that "is a distinction without a difference. The use of the 'created' [or substitute] return directly relates to the tax assessment and is certainly an activity that resulted in the imposition of the tax liability." Tecchio v. United States, 153 F. App'x 841, 843 (3d Cir. 2005) (rejecting the plaintiff's argument that the AIA did not apply because "he was not seeking relief based on the tax assessment but on the use of a substitute return that was created without authorization"); see also Pollinger v. United States, 539 F. Supp. 2d 242, 255 (D.D.C. 2008) ("Despite Plaintiff's semantics, the allegations of his Complaint make clear that his claims of 'illegal actions' . . . are based upon the IRS' assessment and/or collection of taxes. Thus, insofar as Plaintiff seeks an order commanding Defendants to 'cease and desist' . . . , the relief he seeks is barred by the Anti-Injunction Act."). As a result, plaintiff's claims are barred by the AIA, which deprives this Court of subject matter jurisdiction and requires dismissal of the case.

Ellis, 67 F. Supp. 3d at 332-33.

To the extent that Ellis's underlying purpose here is to enjoin the IRS or DOJ from collecting taxes from him, the Court lacks jurisdiction to consider his challenge.

B.    Intercede in Texas Criminal Proceeding

Ellis also wants this Court to inject itself into a criminal investigation of his income-tax avoidance allegedly ongoing before a federal grand jury in the Northern District of Texas. Not

surprisingly, he offers no authority whatsoever for the novel proposition that a district court sitting in the District of Columbia could, as relief in an independent civil suit, somehow require the Department of Justice to inform a federal grand jury in another jurisdiction of Ellis's personal construction of income-tax law.  Cf. United States v. Williams, 112 S. Ct. 1735, 1742, 1743 (1992) (courts have no authority under their supervisory powers to require prosecution to disclose exculpatory information to grand jury; "we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure").  In the event of a future indictment in Texas, he is of course free to use all tools available to criminal defendants to challenge his prosecution there, including the grounds on which the indictment was procured.  See Fed. R. Crim. P. 12(b)(3)(A), (B) (setting forth motions that may be brought based on defects in instituting prosecution or in the indictment).  This Court, however, has no role to play and thus cannot redress any claimed injury here.  See In re Grand Jury Subpoenas, April, 1978 at Baltimore (Harvey), 581 F.2d 1103, 1110 (4th Cir. 1978) (court should refrain from interfering with grand jury when "[a]ny abuse of the grand jury process can be dealt with effectively at another time and in another manner").

      C.      Act in Criminal Proceedings Against Others

Ellis's final request seeks the same relief in regard to criminal proceedings against other non-filers.  Yet he has no standing to assert their rights, even were they not speculative.  Put another way, Ellis suffers no "concrete and particularized" injury, see Lujan, 504 U.S. at 560, from the prosecution of others for the non-payment of taxes, even if he wholeheartedly supports their cause.  As a result, he may not assert claims on their behalf.

**IV. Conclusion**

For the reasons set forth above, the Court will issue a contemporaneous Order dismissing the case for want of subject-matter jurisdiction.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 31, 2016